on behalf of the plaintiff's family, Mr. Paul A. Rogers. On behalf of the plaintiff's athlete, Mr. Scott I. James. Mr. Rogers. Thank you, your honor. May it please the court, counsel. My name is Paul Rogers. I am with the appellate defender's office and I am here representing Miguel Gomez. I would like to address both issues raised in the brief. In sum, the first issue is that this court should vacate the stipulation to guilt because the defendant received an MSR term that exceeded the MSR term that he was admonished about when he entered the stipulation. Can I interject something just based on that point? Sure. Did the defendant ever allege that he would not have pleaded guilty had he been given the correct admission? If he did not, doesn't that sort of doom that claim? No. Well, yes, you're correct in that he did not allege that he would have declined to enter the stipulation for that reason. But it doesn't doom the claim. It just means that's why it's a plain error. This wasn't raised below. I think what this really gets at, and I'm kind of far ahead here, I guess, to the point that it made in the reply brief, which is I think this case should be controlled by Davis, the only Supreme Court decision in Davis in 1991, and not by this Court's decision in Williams. And I know I talked about that at some length in the reply brief, and I'll try not to be negative. I have a few questions about the admonitions and also about Davis. Okay, sure. But first of all, the correct MSR term and the fact that the sentences were on count one and count two would be served at 85 percent were brought up at the sentencing. And the defendant was specifically admonished that it was free to life and 85 percent. At sentencing? At sentencing. Right. And why didn't you put that fact in your brief? It's not in your brief. I did not write the opening brief. I actually don't recall that being omitted from the brief. It's not in the brief, but it's directly relevant to your argument about Davis. In Davis, the defendant did file a motion to withdraw his plea. Correct? Right. But I guess I'm not... And also in Davis, the Court commented on that the defendant was under the mistaken belief, even at the time that he filed his motion to withdraw, that he was not eligible, that he was eligible for probation and task as well. Well, I guess there's a couple things going on here, and so I'm not sure... There was a motion to withdraw in Davis, correct? Yes, there was. So it's certainly distinguishable in that sense. And I don't know that what the Court said at sentencing here is really relevant to the claim we're making about the MSR. Well, the defendant was told what the MSR term was, that the sentences were to be served at 85 percent, and then he was admonished on his... With respect to post-trial motions, that in order to challenge the plea, he'd have to file a motion to withdraw. Correct? Right. You're not contesting the admonishments, are you? You mean the admonishments about the sentencing? Right. No. No, but I guess... I mean, in Davis, when the defendant filed his motion to withdraw, he was still under the misapprehension that he was eligible for task and probation. Here, you cannot make that argument, because the defendant was properly admonished at sentencing that the MSR term was three to life, and his sentences were to be served at 85 percent, and both those admonitions were given at the request of the State, obviously, in order to preserve the plea and protect the plea and the conviction from any post-trial attack. Well, the point is that when he entered the stipulation, in effect, what the State concedes was tantamount to a guilty plea. He was misadmonished. There was no compliance with 402 for the sake of convenience. All this related to the guilty plea hearing. So when they later get to the sentencing, everything you've described, I think, is accurate. In Davis, there were two things going on. The defendant entered a guilty plea to, I believe it was burglary. It doesn't matter what it was. And he was admonished that he was eligible for standard probation. At the defendant's request, the trial court ordered a task evaluation. There was no evaluation was ordered. Later, it turned out he was ineligible for task. He filed a motion to vacate his plea based on his ignorance about being eligible for task, not on his ineligibility for standard probation. That, his ineligibility for standard probation, wasn't the basis for the Illinois Supreme Court's ruling in Davis. The basis was the bad admonishment about the eligibility for standard probation. So essentially, Davis is a case where the Illinois Supreme Court found prejudice based on an error that the defendant had never alleged prejudice to have. And that's exactly the situation. Let's talk about what the court said in Davis. In order to do substantial justice, the court said that they found disturbing to this court errors made by defense counsel in this case. Number one, the defendant did not realize that he was ineligible for task. And number two, the trial court advised the defendant that he was ineligible for probation to an extent, and this is the words of the court, from probation to an extended term sentence. Right. And he was still under that misapprehension at the time he filed this motion to withdraw a plea. In fact, the court commented on that the defense counsel was still confused when his appeal was filed, statements made by counsel at oral argument. Right. So here, you have a situation where, despite what the 402 admonishments are, the defendant was told before he had filed his post-trial motion that his MSR term was three years to natural life and the sentences on counts one and two were to be served at 85%. So how can you rely upon Davis in light of those facts? Well, I mean, maybe we're just reading Davis differently, but to me, it's a similar situation in that, just as in Davis, there was no allegation until they got, even in the Supreme Court, there was no allegation that the Supreme Court should grant relief based on the bad admonishment regarding standard probation. 605B6 says any issue not raised in a motion to vacate is deemed waived. Right. Exactly. Right. And so that's why Davis is a plain error case, and that's why this is a plain error case. But Davis, you don't have, in Davis you had a motion to withdraw, and in Davis you had a situation where the defendant was still confused about the claim. But in here, you're right. You don't have any post-sentencing motion. Do we ignore the trial court's admonishments when we're evaluating whether or not a claim is waived? No, you don't ignore the admonishments in deciding whether the claim is waived, but the issue here is whether it's waived. The issue is whether it's, despite the fact that Davis is a plain error case, whether or not a waiver should be regarded as a plain error. Well, a waiver is about knowing relinquishment of a right as opposed to a forfeiture, which is not. And it all depends on whether or not the defendant actually knew what was right and what was wrong or what was correct or incorrect. And I thought I read Davis, and it was clear in my mind what I thought, how I interpreted it until I'd been listening to you two go back and forth. But the difference between our case and Davis is that it took until here, did it not, to get to the point of raising the issue? Was this raised in the trial court below in the motion to reconsider? No, no. But that is analogous to Davis because the error on which was decisive in Davis, the bad admonition about standard probation, was never raised even in the Supreme Court. Yes, but in our case, he was properly admonished at the time he was sentenced. So he was put on notice. We're going back to Wilk and Whitfield now relative to when did the defendant know and if he, and when, based upon when he knew, was it a timely claim or post-conviction petition or 214-001, whatever, the idea was is that you couldn't claim forfeiture because he didn't know that he was wrongly admonished until he got to the penitentiary and looked at what the penitentiary computer Internet website said he was supposed to be eligible for or ineligible for. So I would rather have you address Williams and explain why you think that Williams juxtaposed against this case, which is Williams, the party didn't ask to withdraw his plea, and I don't think in this case the party asked to withdraw his plea. In Davis, he did. And he did it in what appeared to be not necessarily an timely fashion in the sense that I think he should have filed a post-trial motion immediately, or even better, he should have spoke up and said, wait a minute, at the 402 you said it was such and such, and now you're telling me it's three to life, what's going on here? And then they could supposedly go off call and resolve the problem. But I don't see how Davis is more applicable than Williams is. I'm sorry, Williams, maybe I misheard you, but, Your Honor, I think I thought I heard you say that there was no motion to vacate the guilty plea in Williams. My recollection is that... No, what I believe in Williams, I was on the panel, Williams basically said what he, he didn't say that he was going, he would move to withdraw his plea. He said, had I known this, I might have reconsidered the odds of going to trial versus requesting a parole sentence. So it was, I would rethink this, I would reconsider it. It wasn't, I'm going to move to withdraw my plea, because this is, another aspect of Davis, I think, is the idea that pleas are contracts, and if you've never had a meeting of the minds, then the contract is capable of being rescinded. In Davis, as Justice Burkett indicated, this defendant may have never had a meeting of the mind at all. You mean the defendant in Davis? In Davis, yes. In this case, at least at sentencing, when he was told it was going to be three to life, and he didn't speak up, I think it's pretty hard to say that he didn't have a meeting of the mind, because at least he was put on notice that this is what the agreement was, and if he didn't have that inclination, then he should have said something. That's what those hearings are for. Well, I don't dispute that. My claim only is that Davis is a case where plain error was found based on a bad admonishment, even though the defendant had never complained about that admonishment, even when it got to the Supreme Court. Now, as far as, yes, would it have been better if Mr. Gomez himself, or if Mr. Gomez himself, had been put on notice, we have a problem here. You just gave him more MSR than you told him when he entered the stipulated plea. The stipulated, the end of the function. The state points out, I believe, that the defendant was admonished at arraignment that it was three to life. He was not admonished at the time of the stipulation, but he was admonished at sentencing. Right. And that was clear, and he was given 30 days to file a motion to vacate, raise any issue, and he didn't file a motion to withdraw. So this is, again, Davis is not directly on point. It's clearly distinguishable, and you have the Supreme Court saying specifically that at the time, the defendant clearly did not, and was not given the opportunity to know what he was facing. He was misadvised. Well, obviously, our position is different. I'll move on, but I'd just like to say one more thing. Before we leave that, I'd like to ask you a question as we go back and forth here. Is it your position that to obtain the relief you're asking for, the defendant does not have to establish and make any showing of prejudice by the improper admonishment? There has to be a finding that he was prejudiced by it. And how do we make that finding? You make that finding because it would have been rational for him to have vacated the stipulated. Rational, but he never asked to do that, though. That's true. He didn't ask to do it. He doesn't make the claim that he would not have stipulated or pled guilty, but for the admonishment, he doesn't make that claim. Right. Doesn't he have to? No, I don't think so. I think that's what makes this a plain error case, and I think this is the point I was going to make a minute earlier, which is, after he's sentenced, and yes, he is told that it's going to be three years to life, MSR. I don't think you can assume that Mr. Gomez himself knew that that was a basis for withdrawing the stipulated. That he even knows that there is a Rule 402, let alone what it requires. And that's really the problem here, is that he was told, this is what will happen to you as a result of you stipulating to your guilt. You will get a sentence in this range plus MSR of, I think she said, two years, which is wrong. So later when he learns, oh, it's really three to life, he doesn't know that that provides him grounds to vacate his stipulation. So I don't think it's fair to hold that against him personally. Why would that be the case? I mean, if he's told that when he's sentenced, that should be, the light bulb should go on. Wait a minute. When I stipulated, I thought it was two years. Now you're telling me it's up to life? You're assuming that he has the knowledge that would require, to use your analogy, that there's power running to that light bulb. And the power being his knowledge that he knows that this is an error, that this is grounds to vacate the plea. Do you want to spend some time on the Crankle issue? The Crankle issue, yes, I'll be happy to do that, and I will do it as quickly as I can. The defendant made it clear that he wasn't, he felt that he wasn't being provided adequate representation. He claimed counsel had set him up, which triggers the need for a Crankle inquiry. Now the state's argument basically is that the inquiry was flawed, but nonetheless sufficient to determine why the defendant was unhappy with counsel. Essentially, I think that's a harmless error argument. And I think that really the argument is, it's harmless because he was offered the chance to take away his plea, or his stipulation. He also articulated that what he really wanted to do was to address the family, his aunt and his uncle. He wanted to tell them, and the court said, well, I'm going to let you do that. I think that's an accurate paraphrase, and I think that's more relevant to the question of the other part of the second issue, which is the waiver of counsel, and what exactly he was asking to do. But as far as Crankle is concerned, the trial court did give him a chance to take back his stipulation. He declined that, but the important thing I think to keep in mind is that the trial court didn't tell Mr. Gomez that he would get new counsel. When he was complaining about counsel, it was in the context of not being able to communicate with the family, correct? Well, no, I think he was complaining about counsel, that counsel was not advancing. There was reference to, he flat out said, the charges are 100% false, I never had sex with her, referring to the victim. And this was, there was a long period of time where they were waiting for DNA results, correct? Right. And then the DNA results come back, and boom, it's him. Right. And then at the same time, during that period of time, the defendant had a fellow inmate write a disparaging letter to the victim's family. Do you recall that from the record? I recall there's some reference to that, yeah. And wouldn't it have been reasonable for counsel, and the defendant was upset because he wanted to tell the parents that there was no rape, that he didn't rape her. He wanted the parents to look at the medical records because they didn't show physical injury. Right. Doesn't it stand to reason that defense counsel would have told him, look, the judge said, you can't communicate, stop. Well, he can't communicate ex parte. And I think what he was asking for at the sentencing hearing was, I want to be able to address them in court and tell them I'm sorry and tell them I didn't do this. Which he did. Which he did, which he was allowed to do. Getting back to the Krankel point, again, the trial court didn't tell Mr. Gomez, look, if you're claiming these are false, I'll just wipe the slate clean and we can go back and take away your stipulation. And he declined to do that. What the court didn't tell him was that, if I wipe the slate clean, I'm going to give you new counsel. Which is what he wanted because he thought that counsel wasn't, pardon? Set him up. I think what he was referring to is that there would have been a defense based on other medical evidence. Specifically, I think he was talking about lack of physical injury. Right. So he thought he had a defense. And so if the Krankel inquiry proceeded, it would have resulted in the appointment of new counsel. That's what the new trial would have been with new counsel. So, Roger, let me just interject this. To trigger a Krankel hearing, we can agree that the claim asserting ineffective assistance to counsel has to be somewhat clear. The defending here, this was a very rambling, at times self-contradictory dissertation. So where was the clear request or clear assertion of ineffective assistance to counsel in this rambling back and forth discourse? I don't think he ever made the, for lack of a better term, magic words, my counsel is ineffective. And pardon me, I'm forgetting the name of the relatively recent Illinois Supreme Court case that said, a simple allegation of ineffective assistance of counsel without any elaboration is sufficient to trigger Krankel. I think it's fair, then, to say that if someone makes a specific allegation, my counsel set me up, these charges are 100% false, I didn't rape anybody, I never had sex with her, even if the client doesn't say counsel is ineffective, the inference is, this person is saying his counsel is ineffective. Well, counsel did bring it to the attention, even the letter was dated May 28th. The letter where he, there was a, in writing, the letter, the defendant, it was not put into the record until July, but there was a letter, a handwritten letter, May 28th. He did say in that letter, I suffer from ineffective counsel. Okay. That was in the letter, and then counsel brought it to the attention of the trial court during a June 21st proceeding, and that's when the court addressed the defendant's concerns. That was the sentence, yeah, you're right, yeah. And so what was the defendant not allowed to say during that proceeding? It's not a question of what he was allowed to say, it's whether the inquiry was sufficient. Right, and the judge asked him repeatedly, do you want to withdraw the stipulation, gave him an opportunity to withdraw it, to start over again, and the defendant said, no, I don't want to do that. And I'm paraphrasing, but that's my recollection of it. The defendant is told how the judge will allow him to basically do a do-over, we'll start again. So what more could the trial court have done? Well, I think the trial court could have essentially just complied with Frankel and made a further inquiry not only of the defendant but of trial counsel. But unless the defendant articulates a rational explanation or reason why he feels counsel is ineffective, the trial court's not required to go any further. He could just end the inquiry right there. Now, there was an error here, the state should not have been allowed to make a comment, but this court has found that that can be harmless. So my point is, what was the defendant not allowed to say during that inquiry that would have required anything further? But what else could the trial court have done? Well, as I said, I don't get so much what counsel, what the court asked Mr. Gomez. It didn't give Mr. Gomez a chance to talk. It's that there wasn't an exploration of this with counsel. It doesn't have to be unless there's a clear articulation of some problem that requires an inquiry. Counsel does not have to be questioned unless the defendant articulates some basis to question counsel. Mr. Rogers, I know we've gone over time, but not to further muddy the waters. Is it possible, legally, for the defendant to waive a Frankel hearing? Because it seems to me that if you're complaining about ineffective, then the trial court basically says, for the sake of the argument, I'll give you a new trial. We'll vacate everything. And the defendant insists he doesn't want that. Wouldn't it sort of be an exercise of futility to keep going into the Frankel inquiry when the defendant is given everything he would have had if he carried it out to the umpteenth degree? And he says, no, I don't want a new trial. Isn't he sort of waiving the Frankel hearing? Well, I think that's a fair question in a way that segues to the way of counsel business. And I'll just very briefly address that. I think it's been argued, I hope, sufficiently in the briefs. But I'll just make the point that the defendant did turn down the chance to wipe the slate clean. Insofar, though, as we're talking about whether he should have been given new counsel or whether he might be allowed to represent himself at sentencing, the defendant had good reason to stick with his stipulation. And as the trial counsel pointed out, under Alford, he has a right to plead guilty or to stipulate a bench trial. That's the equivalent of a guilty plea, even if you maintain your innocence. At one point in the proceeding, Mr. Gomez said, I don't want to cause any more damage to the family. And also keep in mind that the stipulation was only to some of the charges. So there was a benefit in terms of some charges being dismissed and therefore avoiding a greater sentence. So, you know, Mr. Gomez had some reasons for declining the trial judge's offer. As I said, I think that bears more on the question of whether he should have been allowed to represent himself at sentencing. I would just make this one last note, and that is, what I just said I don't think defeats the claim that I made earlier, the first issue about the bad MSR ammunition, because the defendant made the decision to stipulate before the court in post-sentencing and without necessarily knowing that that would be grounds to withdraw the stipulation. So I know I've done well over time, and I thank you for your indulgence. Thank you. Good morning, Your Honor. Good morning. Mr. Presiding Justice, and may it please the Court, if we could, I would like to address just the, I suppose the Krinkle issue first so that we can get into the more weightier 402 issue. There are multiple points during the sentencing hearing where the defendant was given an opportunity to withdraw his plea. And on three separate occasions in the record, he said, I want to get this done with today. I want this to be over today. So Judge Prado gave him multiple opportunities to take back his stipulation. Is the Krinkle issue supposed to be about a plea, or is it supposed to be about ineffectiveness also? It's supposed to be about ineffectiveness, but let's not, in this situation, typically a Krinkle would come after a trial. So it would be I disagree with counsel's strategy about X, Y, and Z, or failure to investigate witnesses, or it would be an opportunity for maybe a more fulsome inquiry into what had occurred in a trial setting as opposed to this, which was simply, I suppose, an examination of the relationship between the attorney and his client. But I don't think it was even really that. I mean, just a general allegation of ineffective assistance of counsel might warrant an inquiry, and to the extent it did, the trial court more than made that inquiry here. It asked the defendant on multiple occasions, what is it that you are saying that Mr. Veehoff did? What is it that you are wanting to do today? Are you wanting to withdraw your plea or your stipulation? Is it fair to say that the record reflects that when he said that counsel set him up, that he was referring to the issue of whether or not he had contact with his genitalia, with the genitalia of the girl, which he claimed he didn't do, when in fact there was a lab report indicating that there was DNA in a vaginal swab, which then would indicate that he was referring to the idea or concept that the attorney was setting him up for a charge that wasn't supported by any evidence whatsoever, which meant that based upon the record, his allegations didn't hold water. When you say his allegations, you mean the defendant's? The defendant's allegations that he was set up. You read an awful lot into the defendant's statement there about being set up. I think it might have something to do with that. What else could it possibly be? I think it has to do with the letter that was turned over to the court. I'm not sure if Mr. Veehoff did that or if – I'm not exactly sure about the provenance of that, but I know that there was some – He did have to have a record somehow. Somebody – Yeah. And it was filed, I think, July 5th or something like that. I think the sheriff's office turned it over to court services when the PSI was being compiled, but I think that's how it came to the attention of the court. I think it might be a reference to that, unless – it's certainly possible that – I think the defendant felt aggrieved, upset. I mean, I've got to imagine that being in that situation without – he had stipulated essentially, and he was unhappy with that. And, you know, that's – I'm sorry about that. I really am. But there are crimes and there are consequences. I mean, it's sort of the nature of the system. And it's clear to me that this defendant did not want those consequences. So if he felt set up or if he felt Mr. Veehoff was a representative somehow of the criminal justice system in a larger sense or felt Mr. Veehoff was responsible, I can't – there's a lot of ways to read that particular statement. Mr. Jacobson, again, let's assume that the defendant was lamenting he was unhappy with his counsel. Can he waive the Frankel here? Why couldn't he waive the Frankel? I mean, you can waive your right to a jury trial. You can waive your right to confront witnesses against you. I don't see anything in Frankel that would indicate that it was not a right that could be waived. Because when you vacillate back and forth – and I'm looking at some research in this federal case, it was Cain v. Peters, 972 F. 2nd, 743. It was a case of waiver of counsel, and the defendant was vacillating, and the court says the request must be unequivocal because anything short of an express request is an effort to sandbag the court in the opposition and maybe seek an acquittal with an ace up the sleeve to be whipped out later. So it seems to me in this case those words might ring true. The defendant raises the question of being set up and goes back and forth. When the court offers to do everything over to benefit the defendant, the defendant says no, he doesn't. So what would be the point of doing a Frankel hearing if the defendant is adamant he doesn't want a new trial? I think there would be no point. I think he's very clearly – I mean, I think he's very clearly waived that right. And having been given the opportunity to take back the – I mean, not just have potentially conflict counsel appointed, he was given the opportunity at sentencing to withdraw the stipulation three times. It doesn't matter what happens if you carry it through with no counsel, right? Right. So essentially the court gave him even potentially – or offered him on three different occasions maybe even more of a remedy that he might have been entitled to in that posture, and he turned it down. So I have no idea what remanding it for a fourth time – Do you think the defendant knew or ever knew about the Frankel case? Do I think he knew about it? No, but I'm not sure that he had to. I don't think he has to know about this. Well, if you don't know about something, how can you waive it? No, it's not even – If you don't know about something, how can you waive it? If you don't know about your right to remain silent, how can you waive it? By talking. I mean, you can give your right maybe, but maybe you don't waive it. But I think – He waived his right to a do-over. He waived his right to begin again. Yeah. Which incorporates any problem that there may have been with counsel's advice to stipulate, correct? Yes, and the thing that I'm sort of – I feel like is maybe kind of lost in that is, if the Crankville Agreement would have gone forward, I mean, the trial court would have just asked a couple, like, when you say counsel is ineffective, are you saying counsel is ineffective? What do you mean when you say counsel is ineffective? I'm not sure what the significance is of asking those questions when the trial court skipped to the end and said, do you want to take back your plea right now? We'll do this. We'll set this for trial. Let's go. And on three different occasions he says no. I don't think he has to know about all the steps in between, and the trial court essentially offered him greater relief than he was asking for. He can't say he didn't know about the right to take back the plea and start over because the court told him he could. Right. I think – I mean, given the circumstances, obviously this was a problematic defendant in front of the court. The trial court more than gave him an opportunity to have the exact remedy that they're asking for now. So I can't see how he hasn't passed it up. Can you address the admonishment issue? Sure, absolutely. I think the court – Justice Burkett was in response to your point earlier. I think what distinguishes this case from Davis is that the defendant in Davis was never given the correct information about his sentence at any point in time. Comes up for the first time on direct appeal. This defendant is a little bit different because he's told about the MSR term at the first appearance and before the sentencing. Should he have been admonished about MSR at the time of the stipulation? Absolutely. But the question is, compliance with 402 is really about ensuring that the defendant knows what his sentence is going to be, knows what rights he has, knows he has the right to persist in a plea of not guilty and have the matter set for trial. The question of whether or not this defendant knew what his actual sentence was is the type of factual inquiry for a trial court to conduct by having the defendant file a motion to withdraw a guilty plea and then have the court have some type of an inquiry into, well, what were the defendant's expectations as a result of this plea? It doesn't mean that a bad admonishment at the stipulation, at the guilty plea, is always going to be plain error. If the Supreme Court meant that in Davis, they would have said it. Instead, they say it's a combination of things and it's a question of what did the defendant know at a particular time. Now, what's interesting to me about this is that, Justice Burkett, as you point out before, the defendant in Davis at least filed a motion to withdraw a guilty plea. This defendant never filed a motion to withdraw his stipulation, raises the argument obliquely at best for the first time on direct appeal, and doesn't even really raise the argument in a sense that I think is significant. So we have this kind of vague reference to plain error in the opening brief, but the defendant never says, I was prejudiced when the trial court didn't tell me about this, so I would have done this. Never says that. I have no idea why. I have to tell you, I think there's some irony in saying, the trial court should have told me something, but because the trial court didn't tell me that, I shouldn't be required to make a full statement of how I was prejudiced. And in Davis, as you point out, in Davis, the court said, the defendant alleged if he were aware that he was ineligible for task placement, he would not have pleaded guilty and opted for an open sentence. And we get to that question, too, about, well, the phrasing in Davis, right? They say where there's been prejudice or real justice has been denied. This defendant has not alleged prejudice. And I'm really hard-pressed to see where real justice has been denied, where it's very clear that the defendant was aware of the consequences of the plea. Now, is there going to be a difference in the defendant's sentence? I will share with the court, candidly, that I have been troubled in the past by these cases where, theoretically, a defendant can be, quote, violated at the door, right? This is not one of those defendants. As the record shows, he is not an American citizen. He has been deported in the past. And in all likelihood, what will happen here, why there is absolutely no prejudice in this, he's not going to go from DOC to MSR and then have the conditions of MSR potentially remain in the DOC. He's going to go from DOC to Customs and Border. You don't agree with that? I think we do. You're saying that in exercising their responsibility, that DOC overlooks the fact that people are not citizens? No. I'm saying when a defendant can be discharged from a DOC facility, if he or she is not an American citizen and if there is a removal order and a warrant sworn out for a person, which there is for this defendant, that person will not go on to MSR. They won't set up court. He'll be evaluated as whether or not he's sexually dangerous as well. Or sexually violent. Yeah. Sexually violent. That can certainly happen too. That's required as a matter of law. True. But what I'm saying is that he will never be serving MSR. So there may be hypothetical prejudice to a class of defendants. I'm just saying this defendant is not in that class. Mr. Jacobson, let me ask you a question. You've used the term denial of real justice. I don't know if that's actually defined. Isn't that really synonymous with alleging prejudice? I believe so. All right. Like I said, I think there's, of course, some irony in the fact that the defendant is not saying how he was prejudiced, how he was denied real justice, and then the argument becomes, well, waive the requirement that I even say how I was prejudiced. I don't know how to advance an argument that the defendant has not advanced on his own behalf. So he had an opportunity to make that argument in the trial court. Actually, he had the opportunity to withdraw his plea. He forewent that. He had the opportunity to file a motion to withdraw his plea for stipulation. He forewent that. He had an opportunity to make a claim of prejudice on direct appeal. He's decided to pass that up as well. So I see nothing in there of the defendant making a clear assertion of a right that warrants this court granting him any relief on that issue. Thank you. If there are no further questions. Thank you, Judge. Mr. Rogers, please go ahead. Thank you. First I want to just, since we didn't spend much time talking about the waiver, the self-representation issue when I was up here before, just to make it clear that even if this court rejects the first argument based on the bad admonitions and rejects the argument about fines that the crankle here, any crankle violation was harmless because Mr. Gomez turned down the ultimate relief of getting into trial, it still leaves that question about whether this case should be remanded so that he has the right to choose to represent himself at the sentencing hearing. The trial court never admonished Mr. Gomez in accord with Rule 401. I know this was kind of an ongoing colloquy, but I think the court got wrapped up in whether he was capable of representing himself, but also whether if he was claiming that the charges were false, should he have a new trial. And that's really the wrong question to be asking at that point. Once he said, I would like to proceed on my own, and made it clear that he didn't want a new trial, at that point he should be admonished in accord with 401 and given the chance to represent himself at sentencing. And that's, the argument is that that's second prompt plain error. Now, at the risk of getting a dead horse, just to say a few more words about the admonishment issue. I believe the state admitted that Mr. Gomez should have been admonished properly about the MSR when he did the stipulation. And then I think the state essentially kind of shifts the blame to Mr. Gomez, saying, well, he's complaining about not getting admonishment, but he's doing so now. He didn't complain about it earlier. Well, they're also saying that he's still now does not claim prejudice. Well, we are. That's what I'm doing now. That's what we're doing on a direct appeal. That's what I'm doing more than what the defendant did, what defense counsel did in Davis. Defense counsel in Davis didn't even make the argument. Defense counsel in the Supreme Court found the error in Davis. I'm making the argument that this isn't, that the record here is enough to show prejudice that's required under Davis. And I can't find it now, but I believe it's quoted in the opening brief, a passage from Whitfield, where they talk about, look, noncompliance with, I want to say it's in, well, it's in Whitfield. I don't know the exact page, but that Rule 402 basically implements due process requirements, and that it would be ironic to hold the defendant, to require the defendant to complain about admonishments that he doesn't even know he's supposed to receive. And that's the problem here. It's not, you know, yes, did Mr. Gomez fail to object? He did. But that's not the point. The focus should be on did the trial judge comply with 402? So that's, I think, the gist of my argument. One other point is I would refer this court to the appellate court's decision in the Fish case that I cited. I think that's relevant because it talks about what I was just saying, and that is the focus should be on whether there really was prejudice, not whether the manner in which the defendant asserts it. So for the reason that I stated, I ask this court for the relief asked for in the case. Thank you. We thank both parties for their arguments today. The written decision will be issued in due course. The court stands in recess until the next case is called.